# United States District Court

_____SOUTHERN_____ DISTRICT OF _____FLORIDA_____

FILED by __ D.C.
FEB 11 2000
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

UNITED STATES OF AMERICA

V.

ALEXANDRE PEREIRA,
HAROLD ROBINSON, and
JONATHAN FREDERICKS

**CRIMINAL COMPLAINT**

CASE NUMBER: CC 4030 SNOW

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about ___from on or about April, 1999___, in ___Broward___ county, in the ___Southern___ District of ___Florida___ and elsewhere, defendants, knowingly and with the intent to defraud, conspired to, and actually used one or more access devices (credit cards), to obtain a sum of money equal to or greater than $1000 during a one year period; and knowingly and with intent to defraud, executed a scheme and artifice to defraud a financial institution
in violation of Title ___18___ United States Code, Section(s) ___2, 1029(a)(2), (b)(2); 1344___

I further state that I am a(n) ___Special Agent___ and that this complaint is based on the following
                                     Official Title
facts:

Please see attached affidavit.

Continued on the attached and made a part hereof:    [x] Yes  [ ] No

_____
Christopher Caruso
Special Agent, United States Secret Service

Sworn to before me, and subscribed in my presence,

February 11, 2000                                    at   Ft. Lauderdale, FL
Date                                                      City and State

LURANA S. SNOW
CHIEF U.S MAGISTRATE JUDGE                           _____
Name and Title of Judicial Officer                   Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT

## INTRODUCTION

1. I, Christopher Caruso, being duly sworn, depose and state that I am presently employed as a Special Agent with the United States Secret Service, and have been so employed since December 22, 1997.

2. I am presently assigned to the South Florida Organized Fraud Task Force (SFOFTF) and investigate crimes pertaining to counterfeiting, credit card fraud, bank fraud, money laundering and other fraudulent schemes involving organized groups, both within and outside of the territorial jurisdiction of the United States. I am an investigative or law enforcement officer of the United States, in that I am empowered by law to conduct investigations and to make arrests for felony offenses, under authority of Title 18, United States Code, Section 3056.

## BACKGROUND

3. In conjunction with my official duties, I have been involved in an investigation of an organized fraud group involved in the use unauthorized access devices, namely credit card numbers. This group obtains the credit card numbers of individuals who reside in South America and uses this information to make unauthorized charges. In furtherance of the scheme, the group establishes shell corporations which, in turn, establish merchant accounts with financial institutions. The merchant accounts allow the corporation to process credit card transactions using point of sale (POS) terminals, which are commercial credit card processing equipment. Basically, when a credit card transaction is processed by a merchant with a POS, the merchant's financial institution immediately credits the merchant's account with the amount of the transaction. Accordingly, the group would input the fraudulently obtained credit card numbers into the POS terminals and then immediately withdraw the funds credited to the shell

corporations' merchant account. In this fashion, there would be no funds available in the account to satisfy future "chargeback" obligations. A "chargeback" obligation arises when there is a dispute regarding the charge, as, for example, when the cardholder indicates the charge was unauthorized. In that circumstance the merchant would normally be required to pay back the funds previously credited to its merchant account.

## THE SUBJECTS

4.  Alexandre PEREIRA is the leader of this organization. PEREIRA is responsible for supplying the credit card numbers and orchestrating the manual entries into the POS terminals. On occasion, PEREIRA would also take possession of the POS terminals obtained by the individuals who opened the shell corporations.

5.  Harold ROBINSON owns World Class Computers, a shell corporation which has POS terminals used by PEREIRA. ROBINSON's responsibility was to maintain commercial credit accounts and bank accounts which would be used to process these transactions.

6.  Jonathan FREDERICKS a/k/a Jonathan Onwuemelie FREDERICKS established shell corporations and corresponding merchant accounts. He also obtained POS terminals and manually processed credit card transactions with terminals.

## THE OFFENSE

7.  I have participated in the investigation of the offenses described herein. The following information is known to me personally, or was reported to me by agents of the United States Secret Service (USSS). This information was also obtained from conversations with other law enforcement personnel, bank officials, and victims during the course of my investigation.

8.  On or about September 28, 1999, agents from the SFOFTF received information from

2

FREDERICKS pertaining to the operation described in paragraph 3 above. Specifically, FREDERICKS admitted he established the following shell corporations and that he would recruit individuals to serve as corporate officers for these shell corporations who would establish merchant accounts for the shell corporation:

A. Createk Computers Inc., which established a merchant account with Paymentech on or about April 22, 1999. Orlando Leiba was designated as its secretary and treasurer, and Raoul Pierre Louis was designated as its president.

B. World Class Computers Inc., which established a merchant account on or about June 30, 1999. Harold ROBINSON was its designated president.

C. Comtel Electronics, which established a merchant account on or about June 17, 1999. Jonathan FREDERICKS was its treasurer and president. It should be noted that Comtel was not a complete shell, it also engaged in legitimate business transactions, in addition to the fraudulent ones.

9. FREDERICKS further admitted that he would order POS terminals for credit card transactions. Upon receipt of the terminals, FREDERICKS would turn them over to a Colombian male, known as "Alex". "Alex" would then conduct numerous credit card transactions through these terminals, giving the receipts and batch reports to FREDERICKS upon completion. Once FREDERICKS confirmed the proceeds were in the various accounts, he would issue "Alex" a check for the proceeds, minus FREDERICKS' commission. When chargebacks activity began, the account would be abandoned, and the suspects would move on to a new account. "Alex" was getting the numbers through a South American contact. Subsequent investigation revealed that "Alex" is Alexandre PEREIRA.

3

10. FREDERICKS issued eighteen (18) checks totaling approximately $27,068.00 to PEREIRA between June 3, 1999, and October 30, 1999.

11. In or about October, 1999, Money Tree Corporation, contacted the Secret Service in Reno Nevada, and advised that chargeback activity had arisen for fraudulent credit card use pertaining to Createk Computers and World Class Computers. Because these corporations were located in Broward County, the Reno Office of the Secret Service relayed this information to the SFOFTF.

12. Money Tree Corp. advised that it has sustained losses from World Class Computers Inc., in excess of $100,000.00

13. Charlene Borghi of Republic Security Bank contacted the SFOFTF and advised that her records reflected that FREDERICKS maintained an account, under the name of Createk. The account was opened on June 4, 1999, and was closed on August 23, 1999, because of fraudulent activity from credit card "chargebacks" The loss on that particular account is approximately $10,219.00.

14. Mike Devine a Fraud Investigator with Merchant Services, contacted agents from the SFOFTF and advised that FREDERICKS was a client of Merchant Services under the business name of Comtel Electronics. Mr. Devine confirmed that Comtel Electronics had received POS terminals and that the account had "chargebacks" in the amount of $5,900.00.

15. Working with FREDERICKS, on November 4, 1999, agents from the SFOFTF conducted surveillance on FREDERICKS' place of business, Comtel Electronics, 968 SW 81st Ave., North Lauderdale. At approximately 10:25 a.m., PEREIRA and an unknown white male driver arrived at Comtel Electronics in a 1998, black, Pontiac Grand Prix, registered to PEREIRA. PEREIRA was observed entering the store and immediately moving behind the counter. Acting under the

direction and control of agents of the SFOFTF, FREDERICKS gave PEREIRA a check from Comtel Electronics. PEREIRA was then observed sitting in front of three (3) POS terminals, taking out an electronic organizer and making manual entries into the POS terminals. In conjunction with the transactions, PEREIRA was seen tearing off receipts from the POS printer after each series of entries. After a total of ten (10) transactions, PEREIRA moved back around to the front of the counter and handed FREDERICKS the receipts.

16.     During the transaction referenced in paragraph 15 above, acting under the direction and control of agents of the SFOFTF, FREDERICKS was wearing a surreptitious recording device which was monitored by agents of the SFOFTF. FREDERICKS and PEREIRA discussed obtaining additional credit card numbers, conducting additional transactions, the logistics of conducting additional transactions and how the proceeds of the fraudulent transactions would be divided between the two.

17.     On this same day, November 4, 1999, PEREIRA was observed leaving Comtel Electronics at approximately 10:50 a.m., and proceeding to Commercial Bank, University Drive, NW 20th Street, Tamarac. PEREIRA was observed entering the bank where he proceeded to cash a check.

18.     At that time, USSS SAs French and Lascell entered Commercial Bank and interviewed the bank teller, Kathy Bradley. Ms. Bradley was shown a photo of PEREIRA whom she identified as "Alex". Ms. Bradley sated that she had cashed a check from Comtel Electronics for "Alex" and that she had dealt with PEREIRA on "five or six" prior occasions involving the cashing of corporate checks through FREDERICKS' Comtel account.

19      On November 5, 1999, USSS SAs French and Jones conducted a surveillance on

FREDERICKS' place of business, Comtel Electronics. PEREIRA was observed entering the store, and after a brief conversation with FREDERICKS, exiting.

20. On January 11, 2000, agents of the SFOFTF removed the garbage left on the street in front of 155 Via Milan Drive, Davie, the residence of Harold ROBINSON. The following items were contained in the contents of the retrieved garbage:

 A. Multiple unopened envelopes addressed to World Class Computers, Inc., which contained chargebacks and affidavit from South American credit card customers;

 B. Numerous pieces of notebook paper with handwritten notes describing "Harold" and "Alex" and "%60" / "%40" splits and cash amounts next to the names. These papers also reference different business bank accounts such as First Union Bank and Nations Bank;

 C. Numerous genuine billing statements from various businesses: bank statements, FPL bills, water bill, telephone bill; all bearing the name and address of Tyronica Hill and/or Harold ROBINSON.

21. On January 14, 2000, agents from the SFOFTF executed a search warrant on the home of Harold ROBINSON and Tyronica Hill, 155 Via Milan Terrace, Davie, Florida, pertaining to a counterfeiting scheme. During the course of this search agents seized the following:

 A. several POS terminals in a file cabinet which contained multiple "chargeback" documents from World Class Computers Inc.;

 B. approximately 50 unopened envelopes addressed to World Class Computers Inc., which contained "chargeback" documents relating to South American credit card numbers;

 C. incorporation documents for World Class Computers Inc., listing Harold ROBINSON as President and Registered Agent;

D. numerous business check books in the name of World Class Computers Inc., bearing the signature of ROBINSON;

E. First Union Investment statements in the name of Harold ROBINSON dated June, 1999, through October, 1999, listing investments totaling $100,000.00.

22. On February 8, 2000, acting under the direction and control of agents of the SFOFTF, FREDERICKS placed a consensually monitored telephone call to PEREIRA. During this conversation, PEREIRA discussed credit card numbers he had obtained in El Salvador and POS terminals he requested be available for additional fraud.

23. On February 9, 2000, acting under the direction and control of agents from the SFOFTF, FREDERICKS placed a consensually monitored telephone call to PEREIRA. During this conversation, PEREIRA provided FREDERICKS with credit card numbers which FREDERICKS entered into a POS terminal.

24. On February 9, 2000, Michael Spain of First Data Corporation, arrived in Broward County Florida to assist agents in this investigation. Spain advised agents of the SFOFTF that the five (5) credit card numbers entered into the POS terminal at Comtel Electronics (see paragraph 23 above) were fraudulently obtained.

25. On February 10, 2000, agents from the SFOFTF observed PEREIRA enter Comtel Electronics. FREDERICKS advised that PEREIRA provided him with seven (7) credit card numbers. Acting under the direction and control of agents of the SFOFTF, FREDERICKS entered those credit card numbers into a POS terminal. Spain advised agents of the SFOFTF these seven credit card numbers were fraudulently obtained.

26. Based on the above information, I have probable cause to believe that between

7

approximately April, 1999, and February 10, 2000, Alex PEREIRA, Harold ROBINSON, Jonathan FREDERICKS and others, both known and unknown have knowingly and with intent to defraud, effected transactions with one (1) or more access devices issued to another person or persons, to receive payment or any other thing of value during any one (1) year period the aggregate value of which is equal to or greater than $1,000.00; knowingly and with intent to defraud, executed a scheme and artifice to defraud a financial institution, and have conspired to do the same.

**FURTHER AFFIANT SAYETH NOT.**

_____
CHRISTOPHER CARUSO, SPECIAL AGENT
UNITED STATES SECRET SERVICE

Subscribed and sworn to
Before me this _11th_ day
of February, 2000.

_____
LURANA S. SNOW
CHIEF UNITED STATES MAGISTRATE JUDGE

8