UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE № 00-6042-CR-ZLOCH
CASE № 00-6089-CR-ZLOCH

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

ALEXANDRE PEREIRA,

       Defendant.
_____/



## DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT AND INCORPORATED MEMORANDUM OF LAW

The Defendant, **ALEXANDRE PEREIRA**, by and through his undersigned counsel, files the foregoing objections pursuant to the provisions of Rule 32, Federal Rule of Criminal Procedure, Administrative Order 90–26 of the Local Rules of the Southern District of Florida, United States Sentencing Guideline §§6A1.2–3. Our objections relate to factual and legal conclusions contained in the Presentence Investigation Report and are specifically set forth herein.

### I.
### STATEMENT OF FACTS

1.    The sentencing in this case is presently scheduled for October 13, 2000, before the Honorable William J. Zloch, Chief Judge of the Southern District of Florida.

2.    The Defendant is to be sentenced for conduct charged in two (2) separate Indictments, both of which are related to credit card fraud.


3. The Presentence Investigation Report[1] calculations begin with a base offense level of six (6) based upon §2F1.1. [PSI, ¶ 43, p.16]

4. The probation officer enhanced the Defendant for an agreed upon amount of loss that is more than two hundred thousand ($200,000.00) dollars, but less than three hundred fifty thousand ($350,000.00) dollars (§2F1.1(b)(1)(I)). [PSI, ¶ 44, p.16].

5. The probation officer added two points since the offense involved more than minimal planning (§2F1.1(b)(2)). [PSI, ¶ 45, p.16].

6. We take no issue with the facts or law utilized to arrive at the above calculations contained in paragraphs three (3), four (4) and five (5).

7. We object to the four (4) point enhancement awarded to **MR. PEREIRA** for his role in the instant offense as a leader or organizer §3B1.1(a), [PSI, ¶ 47, p.16], since he is neither a leader, organizer, manager or supervisor pursuant to §3B1.1(a) or (b).

8. We further object to the additional two (2) point increase based on the erroneous conclusion that a substantial part of both conspiracies was committed from outside the United States (§2F1.1(b)(5)(B)). [PSI, ¶ 46, p.16]

---

[1] Alternatively referred to herein as "P.S.I".

## II.
## A ROLE ENHANCEMENT IS NOT WARRANTED

The facts *sub judice* do not support the assessment that **MR. PEREIRA** was "an organizer or leader of a criminal activity that involved five or more persons or was otherwise extensive…" We suggest that this is a conclusory allegation lacking a factual basis. To demonstrate that the conclusion stated in the P.S.I is erroneous, and that **ALEXANDRE PEREIRA** was not an organizer or leader a discussion of the facts is necessary.

### A.
### CASE № 00-6042-CR-ZLOCH

The evidence demonstrates that the Defendant had neither a subordinate nor a superior role to that of his co-defendants. The scheme in this, as well as the other case before the Court (Case № 00-6089-CR-ZLOCH), required the following significant acts be committed:

1. Creating corporations and corresponding bank accounts as the means through which the fraudulent transactions were conducted;

2. Acquiring point of sale (POS) terminals from credit card companies after establishing merchant accounts for conducting fraudulent credit card transactions;

3. Obtaining credit card numbers for use in the scheme;

4. Running the credit card numbers through the point of sale terminals;

5. Monitoring the bank and credit card accounts so that the participants knew when funds were available for retrieval;

6. Obtaining false identification, primarily to facilitate fraudulent banking transactions;

Law Offices of Samuel J. Rabin, Jr., P.A., 799 Brickell Plaza, Suite 606, Miami, Florida 33131 • Telephone (305) 358 - 1064

      7.    Conducting banking transactions to obtain control of the proceeds; and

      8.    Taking control of and dividing up the ill-gotten proceeds.

A review of the roles of the participants, and the acts committed by them reflect that **MR. PEREIRA'S** primary role was to obtain and provide the credit card numbers, which he accomplished through an individual in South America who provided the card numbers to him. While there were several instances where he performed ministerial tasks such as physically running credit card numbers through point of sale terminals or cashing checks, these acts were not the core reason he was involved. **ALEXANDRE PEREIRA** had no role in setting up any of the corporations or bank accounts used to facilitate the instant fraud. He was not involved in acquiring the point of sale terminals or merchant accounts nor did he obtain false identification for use here.

**MR. PEREIRA** did not control the proceeds illegally obtained, but relied on others to provide him with his share and significantly, his share was fifteen (15%) percent.[2] The Defendant's share is in contrast to the sixty (60%) percent share that Jonathan Fredericks received in the transactions in which he and the Defendant participated.

In support of the subject enhancement, the probation officer states "He recruited individuals to participate in the offense, provided them with credit card numbers... and orchestrated the manual entries into the POS terminals, and in some cases took possession of the POS terminals." [PSI, ¶ 32, p.12]. There is no evidence that this

---

[2] Various records obtained during the investigation in addition to testimony from cooperating defendants established the split of proceeds to be "60-40." The sixty was a reference to sixty (60%) percent for those who utilized the credit card numbers provided by the Defendant. The forty referred to the forty (40%) percent that **MR. PEREIRA** obtained from which he retained fifteen

Page 4 of 14

Law Offices of Samuel J. Rabin, Jr., P.A., 799 Brickell Plaza, Suite 606, Miami, Florida 33131 • Telephone (305) 358 - 1064

Defendant recruited any other member to participate in the acts before the Court. He was a supplier of illicit credit card numbers, and within the community of those engaged in such crimes, it was relatively well known that he could obtain credit card numbers.

With specific reference to how the Defendant met Jonathan Fredericks, it was through an intermediary who knew that one man had what the other needed and sought to obtain a commission for introducing them. This Defendant did not orchestrate the use of the POS terminals as it is alleged, but there were occasions when he performed the ministerial act of making entries into the terminals. The claim that Mr. Pereira recruited those to whom he provided the credit card numbers is no different than claiming that a drug dealer recruits his customers and the law does not support such a conclusion.

The objective evidence is that **MR. PEREIRA** had no ability to give orders, control, manage, supervise, command, or make demands upon any other person. He was the supplier of the stolen credit card numbers utilized to perpetrate this fraud, no more and no less.

## B.
### CASE № 00-6089-CR-ZLOCH

The subject events of this case were discovered from records seized during a post-arrest search of **ALEXANDRE PEREIRA'S** house. In this case, the Defendant associated with Robert Steele, an individual who set up corporations and bank accounts to facilitate fraud. Steele also acquired the point of sale terminals and then

---

(15%) percent as his share with the remaining twenty-five (25%) percent provided to the source of the credit card numbers.

set up merchant accounts.   Both men shared banking responsibilities by cashing checks.  As in the aforementioned case, **MR. PEREIRA** had no control over the proceeds obtained, but relied on Steele to provide him with his share.  Here again, the Defendant did not recruit Mr. Steele, and initially did not even deal directly with him.  Mr. Steele ran an escort service and a customer of said escort service acted as the intermediary for the transactions between Mr. Steele and the Defendant.   Only when the Steele developed a problem with the intermediary, did Mr. Steele seek to meet the Defendant. In this case, the Defendant's share was again fifteen (15%) percent while Steele received sixty (60%) percent.

### i.
### AN ENHANCEMENT CANNOT BE
### BASED UPON A CONCLUSORY ALLEGATION

It is erroneous to rely upon the conclusory and unsupported assertion of a probation officer contained in the presentence investigation report to impose the enhancement under §3B1.1(a).  *United States v. Makes Room*, 49 F.3d 410, 417 (8th Cir. 1995).  While the government has both the opportunity and burden in a sentencing hearing to establish that **ALEXANDRE PEREIRA** is an organizer, leader . . . of the alleged criminal activity and that five (5) persons were involved or that it was otherwise extensive, the mere allegation that he played such a role is not sufficient to warrant the four (4) level enhancement.  Where for example, a P.S.I. only states, "In discussing the relative roles of the defendants in this case with the government and the DEA, it was determined that [the defendant] should receive a role adjustment pursuant to Section 3B1.1(c)" it has been held that this type of conclusory language provides an insufficient

Law Offices of Samuel J. Rabin, Jr., P. A., 799 Brickell Plaza, Suite 606, Miami, Florida 33131 • Telephone (305) 358 - 1064

basis for the district court to support an upward adjustment. *United States v. Elwood*, 999 F.2d 814, 817 (5th Cir. 1993).

While a presentence report generally bears sufficient indicia of reliability to be considered as evidence by the trial judge in making the factual determinations required by the guidelines, *United States v. Alfaro*, 919 F.2d 962, 966 (5th Cir. 1990), in this case, however, the P.S.I lends no support for the essential factual determinations about **MR. PEREIRA'S** alleged leadership role. A review of the P.S.I. reflects that it merely offers a recitation of the conclusions of the prosecutor and/or agents.

In *United States v. Patterson*, 962 F.2d 409 (5th Cir. 1992), the government attempted to support an offense level increase for the defendant's role as a manager or supervisor of a conspiracy based upon the following statement in the P.S.I.

> Information from [the AUSA] indicates that the defendant and co-defendant . . . managed and supervised other persons who worked for them as they carried out their illegal activities.

In *Patterson*, the Fifth Circuit found that the unsworn assertions of the Government's attorney do not provide, by themselves, a sufficiently reliable basis on which to sentence the defendant." 962 F.2d at 415 (citing *United States v. Johnson*, 823 F.2d 840, 842 (5th Cir.1987). Bald, conclusory statements do not acquire the patina of reliability by mere inclusion in the P.S.I., *Elwood* at 817-818, and we respectfully submit that the instant language is similar to that language which was specifically rejected in *Elwood, supra*.

Courts have held that without proof of the defendant's leadership role, evidence of the operations extensiveness is insufficient as a matter of law to warrant a sentence

adjustment based on a defendant's role as organizer or leader of a criminal activity. *United States v. Alred*, 144 F.3d 1405, 1407 (11th Cir. 1998). To warrant offense level sentence enhancement based on defendant's role as organizer or leader of criminal activity, the government must prove the existence of an aggravating role by preponderance of the evidence. *Id.* There is nothing in the probation officer's PSI that indicates the government would be able to prove **MR. PEREIRA** had an aggravating role by a preponderance of the evidence.

Sentencing enhancements under 3B1.1(a) usually have been applied to cases involving illegal drug transactions. However, an analogy to such cases can be made in the instant case. It has been held that the buyer-seller relationship is inappropriate for a 3B1.1(a) sentencing enhancement. *United States v. Maxwell*, 34 F.3d 1006, 1012 (11th Cir. 1994) citing *United States v. Yates*, 990 F.2d 1179 (11th Cir. 1993). Arrangements between buyers and sellers such as negotiating deliveries are simply incidental to the buyer-seller relationship and thus in a continuing criminal enterprise case, it has been held that evidence of fronting without more is insufficient to satisfy the management requirement for a 3B1.1(a) sentencing enhancement. *United States v. Witek*, 61 F.3d 819, 823 (11th Cir. 1995). Likewise, in the instant case, at most what **MR. PEREIRA** did was front credit card numbers to the individuals who were organizing and managing the credit card scheme. His actions easily can be analogized to the drug seller who provides the product to a buyer. His involvement essentially ceases at the point of obtaining and providing the credit card numbers to those who are running the scheme. **MR. PEREIRA** had the antithesis of a leadership role; rather he was directed

Law Offices of Samuel J. Rabin, Jr., P.A., 799 Brickell Plaza, Suite 606, Miami, Florida 33131 • Telephone (305) 358 - 1064

and instructed by those who did have controlling roles at all times and thus his involvement should be deemed to be insufficient to warrant a sentencing enhancement under 3b1.1(a).

## ii.
### NO EVIDENCE THAT THE DEFENDANT EXERCISED CONTROL

Sentence enhancement under section 3B1.1(b) applies to a defendant who "exercised some degree of control or organizational authority over someone subordinate to him in the drug distribution scheme." *United States v. Roberts*, 14 F.3d 502, 524 (10th Cir.1993) (citing *United States v. Reid*, 911 F.2d 1456, 1464 (10th Cir.1990), *cert. denied*, 498 U.S. 1097, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991).

The Commentary to §3B1.1 lists various considerations the sentencing court should take into account in assessing the defendant's leadership role, including "the ... exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity and the degree of control and authority exercised over others." U.S.S.G. §3B1.1, comment.

In considering these factors, the sentencing court should remain conscious of the fact that the gravamen of this enhancement is control, organization, and responsibility for the actions of other individuals, *United States v. Torres*, 53 F.3d 1129, 1142 (10th Cir. 1995) because §3B1.1(a) "is an enhancement for organizers or leaders, not for important or essential figures." *United States v. Roberts*, 14 F.3d 502, 523 (10th Cir. 1993), *United States v. Litchfield*, 959 F.2d 1514, 1523 (10th Cir. 1992). This Court

should not label **MR. PEREIRA** an organizer or leader where no evidence exists of his decision-making authority or control over a subordinate necessary to conclude he was an organizer or leader. While we think it is appropriate to conclude that **MR. PEREIRA** was an important figure, and integral to the success of the conspiracy, this fact does not warrant application of §3B1.1(a).

A review of the other factors set forth in the guideline commentary provides additional support that a §3B1.1 enhancement does not apply. The evidence here is that the Defendant received a smaller share of the proceeds, not a larger share as the commentary suggests would be the case of a person appropriately receiving this enhancement. The evidence of **MR. PEREIRA'S** participation in this scheme is limited to obtaining the credit card numbers from another individual. His role was relatively small compared to that of others who had to set up phony entities, open bank accounts, obtain equipment, and make it appear to all the world that they were operating a legitimate business. Taking an active role in the endeavor does not lead to the conclusion arrived at in this P.S.I, that he was therefore necessarily a material participant in its planning.

The evidence presented is that the initiator of one scheme charged is Jonathan Fredericks. It was Mr. Fredericks who had the contacts with the DMV, it was Mr. Fredericks who established the fraudulent corporations and corresponding bank accounts, it was Mr. Fredericks who opened merchant accounts and who ordered the point of sale terminals for the credit card transactions. **MR. PEREIRA'S** involvement was to assist in processing the credit card numbers he obtained from South America. Once

Law Offices of Samuel J. Rabin, Jr., P. A., 799 Brickell Plaza, Suite 606, Miami, Florida 33131 • Telephone (305) 358 - 1064

the transactions were completed, the receipts and batch reports were given to Mr. Fredericks. Once the proceeds arrived, Mr. Fredericks would write **MR. PEREIRA** a check for his share, which was significantly less than was Mr. Fredericks'.

There is no evidence from which to fairly conclude that the Defendant was an organizer or leader of this scheme, or that he exercised any form of control over anyone. The record is devoid of proof that **MR. PEREIRA** exercised any control within this organization. There is evidence he had co-conspirators and co-workers, but taking the next jump that he was a leader is an unsupported conclusion.

### III.
### AN ENHANCEMENT PURSUANT TO §2F1.1(b)(5)(B) IS UNWARRANTED AS MOST OF THIS OFFENSE OCCURRED WITHIN THE UNITED STATES

The probation officer has suggested an enhancement because the fraudulent scheme occurred in substantial part outside the United States. The attempt to assess this enhancement is misdirected. Although there is very little case law with respect to this guideline provision, the historical notes of the proposed 2000 Amendments to §2F1.1 of the Federal Sentencing Guidelines indicate that the amendment implements the directives of the Telemarketing Fraud Prevention Act of 1998 (hereinafter "the Act"). *See Telemarketing Fraud Prevention Act*, Pub. L. 105-184 (1998). The Act requires that the Sentencing Guidelines provide "an additional appropriate sentencing enhancement, if the offense involved sophisticated means, including but not limited to sophisticated concealment efforts, such as perpetrating the offense from out the United States."

In the case at bar, the only act that transpired outside the United States was in obtaining the credit card numbers of South American residents. The meetings among conspirators occurred in the U. S.; every credit card transaction occurred in this country; the corporations, bank accounts and credit card merchant accounts were all located in the United States; and all of the checks derived from the scheme were deposited and/or cashed in banks within the United States. The single act outside the borders occurred when **MR. PEREIRA** would receive credit card numbers from his source in Argentina. Even those acts occurred primarily in the United States since the numbers were transmitted via telephone and payments to this source were sent via Western Union.

Every other element entailed in either of the schemes referred to in Case № 00-6042 and Case № 00-6089 occurred wholly within the United States. We submit that it was only a minimal part of both conspiracies, at best, that occurred outside of the United States.

The intent of this provision is to enhance one's punishment when attempts are made to conceal the criminal activity by conducting it outside of the territorial borders of the United States. This did not occur here. All significant acts in furtherance of the crime occurred in this country. There is no indication that anything that occurred outside the United States in any way reduced the possibility of detecting this criminal scheme. For all these reasons, we submit the criteria for enhancement required in §2F1.1(b)(5)(B) is not sufficiently met.

Law Offices of Samuel J. Rabin, Jr., P. A., 799 Brickell Plaza, Suite 606, Miami, Florida 33131 • Telephone (305) 358 - 1064

Pursuant to Local Rule 88.9, undersigned counsel spoke with Assistant U. S. Attorney Bertha Mitrani, in an attempt to resolves the issues set forth in the foregoing. Ms. Mitrani objects to our position on the enhancement related to §2F1.1(b)(5)(B), but as of the date of this filing undersigned counsel she has been unable to ascertain her position on the Defendant's role.

WHEREFORE, based upon the factual and legal grounds set forth in the foregoing motion, the Defendant, **ALEXANDRE PEREIRA,** prays that this Honorable Court will grant his objections to the Pretrial Sentencing Report and order amendments thereto consistent with the objections.

Respectfully submitted,

**SAMUEL J. RABIN, JR., P.A.**
799 Brickell Plaza, Suite 606
Miami, Florida 33131
Tel: (305) 358-1064
Fax: (305) 372-1644
Email: sjrlaw@bellsouth.net

SAMUEL J. RABIN, JR.
Florida Bar № 273831

Page 13 of 14

Law Offices of Samuel J. Rabin, Jr., P. A., 799 Brickell Plaza, Suite 606, Miami, Florida 33131 • Telephone (305) 358 - 1064

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of October 2000, a true and correct copy hereof was mailed via facsimile transmission and first class United States Mail to:

Bertha Mitrani
Assistant United States Attorney
Office of the United States Attorney
99 Northeast 4th Street
Miami, Florida  33132

[Fax № 954-356-7336]

and

Kathryn Gomez
U. S. Probation Officer
200 S. Andrews Avenue, Rm. 406
Ft. Lauderdale, Florida  33301

[Fax № 954-769-5566]



SAMUEL J. RABIN, JR.

Page 14 of 14

Law Offices of Samuel J. Rabin, Jr., P.A., 799 Brickell Plaza, Suite 606, Miami, Florida 33131 · Telephone (305) 358 · 1064